## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) BAKER HUGHES, INCORPORATED,**<br>**a Delaware corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 15-cv-484-TCK-TLW** |
| **(2) SUMMIT ESP, LLC, an Oklahoma**<br>**limited liability company,** | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT

Plaintiff, Baker Hughes, Incorporated ("Baker Hughes"), for its causes of action against Defendant Summit ESP, LLC ("Summit"), alleges and states as follows:

## NATURE OF ACTION

1.      This is an action for injunctive relief and monetary damages arising out of Summit's trademark infringement, unfair competition and deceptive and unfair trade practices under the Federal Lanham Act and under the statutory and common law of the State of Oklahoma.

## PARTIES, JURISDICITON & VENUE

2.      Summit is an Oklahoma limited liability company, which does business throughout the State of Oklahoma, with its headquarters in Tulsa, Oklahoma, in the Northern District of Oklahoma. This Court therefore has personal jurisdiction over Summit.

15928030_3.docx

3.     This Court has subject matter jurisdiction in this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because it arises under the Lanham Act, 15 U.S.C. § 1052 *et seq.*  Jurisdiction over the state law causes of action are proper under 28 U.S.C. § 1338(b) and § 1367(a) because they are joined with substantial and related claims under the federal Lanham Act and/or are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4.     Venue is appropriate in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Oklahoma, as Summit advertises and/or sells goods and services under the Infringing Trademark in the State of Oklahoma and this District, as well as having its principal place of business and headquarters in Tulsa, Oklahoma.  Venue is also appropriate pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Summit is subject to personal jurisdiction in this Court.

## FACTUAL BACKGROUND

### Baker Hughes & the SENTRYNET Trademark

5.     Baker Hughes provides technology, equipment, and services for the worldwide oil and gas exploration, development and production industry. The company, and its predecessors, Baker International and Hughes Tool Company, have supported the oil and gas industry for over 100 years, developing during that time significant know-how and proprietary knowledge, technology, and software. The mark "Baker Hughes" has been in continuous use at all times relevant hereto, and there are numerous "Baker

Hughes" marks, both registered and common law (collectively, the "Baker Hughes Mark").

6.      In a variety of oil production conditions it is necessary to have an Electrical Submersible Pump ("ESP") or Progressive Cavity Pump ("PCP") that provide artificial lift to get hydrocarbons from the deep formation to the surface.  Baker Hughes has facilities in Tulsa and Claremore that focus on manufacturing and support for artificial lift systems, including ESPs, PCPs, and surface hardware systems for powering, monitoring and controlling ESPs and PCPs.  Baker Hughes uses the mark Centrilift® (U.S. Registration No. 4236677) to identify its conventional ESP systems.

7.      Baker Hughes uses the mark SENTRYNET™ for its proprietary hardware platform that is used to control the injection of oilfield production chemicals, monitor tank levels and usage, which subsequently sends this data to a local supervisory control and data acquisition ("SCADA") system or other secure, web-based monitoring system. Baker Hughes also uses the mark SENTRYNET™ for its tank monitoring services comprising a platform allowing a range of level sensors and wireless communications technologies to send data to the secure Baker Hughes website, so a customer can monitor the entire field and determine production and chemical status.

8.      Baker Hughes' SENTRYNET™-branded services have a multitude of features.  For example, utilizing a chemical pump controller, it can sense when well conditions change, such as pressure or pump fatigue, and automatically adjust the chemical feed rate to achieve the customer's true production needs.   Additionally,

wireless tank level monitors accurately measure chemical tank usage and product availability using various wireless communication and sensor technology.

9.     Baker Hughes also offers a product under the mark "Vision$^{TM}$," which is a web-based artificial lift monitoring system.   Baker Hughes offers the Vision$^{TM}$ monitoring system in combination with the SENTRYNET$^{TM}$ platform as a single-source solution to well production.  Together, the products offer real-time monitoring services for the artificial lift systems with coordinated control of chemical injection.  The sensor and data communication technology ensure the artificial lift performance, chemical injection performance, and chemical tank data can be viewed remotely from any secure Internet connection and that artificial lift rate and chemical injection rates are optimized to provide maximum production and chemical protection of equipment.  In whole, these systems offer accurate data monitoring that optimizes production, lowers cost, increases staff efficiency, reduces HSE exposure, and facilitates the digital oilfield.

10.     SENTRYNET$^{TM}$ and Vision$^{TM}$ branded products and services are specifically marketed to oil and gas exploration companies.

11.     Baker Hughes has continuously used the SENTRYNET$^{TM}$ Trademark in commerce in connection with the software and monitoring for ESPs and oilfield equipment since at least 2004. A trademark application for the SENTRYNET$^{TM}$ mark was filed on August 12, 2015, with U.S. Trademark Application serial number 86722768.

12.     Baker Hughes has incorporated the SENTRYNET$^{TM}$ Trademark throughout its business and in connection with advertisement for the same, including but not limited to use of the same in retail locations throughout the United States, on its website located

4

at www.bakerhughes.com, in advertising and signage, in promotional pieces used at retail locations and trade shows and other events throughout the United States, including in this District, and in product materials. Due to the widespread and extensive use of the SENTRYNET<sup>TM</sup> Trademark by Baker Hughes, strict control over the nature and quality of the goods and services provided therewith, and extensive advertising and promotions activities and substantial sales as a result thereof, Baker Hughes has created an excellent reputation and valuable goodwill in the SENTRYNET<sup>TM</sup> Trademark.

13. The SENTRYNET™ trademark is inherently distinctive and serves to designate the origin of goods and services emanating from Baker Hughes.

**Summit's Wrongful Appropriation of the SENTRYNET<sup>TM</sup> Trademark.**

14. In 2011, Summit was formed by, among others, several former employees of Baker Hughes to be a competitor in the oil and gas industry, also specializing in ESPs. Since that time, Summit has committed numerous acts in violation of Baker Hughes' trademark and other rights.

15. Upon information and belief, in 2014, in Wyoming, and potentially in other locations throughout the United States, Summit removed, obliterated or obscured or caused to be removed, obliterated or obscured the Baker Hughes Mark and Centrilift® Mark from at least one piece of Baker Hughes equipment, a variable speed drive ("VSD") sold under Baker Hughes' federally registered trademark Electrospeed 3®. The Baker Hughes Mark and the Centrilift® Mark were replaced with Summit's own logo and contact information. The main Baker Hughes logo was covered in a manner that could only be intentional, as the recessed lettering was specifically covered by Summit

15928030_3.docx

information. While a portion of the Centrilift® Mark was similarly covered, the portion of the mark that was not covered by Summit's logo and information appears to have been scraped off or otherwise removed. (*See* Photographs, attached hereto as Ex. 1.)

16.   The Electrospeed 3®-branded ESP VSD is designed and marketed by Baker Hughes in connection with the SENTRYNET™ and Vision™ products.   By placing Summit's information on the equipment, it creates the impression that Summit's SENTRY™ system is associated with or sponsored or approved by Baker Hughes'  for use in connection with  ESP Variable Speed Drives such as Baker Hughes' Electrospeed 3®-branded VSD. Alternatively, it may create reverse confusion on the part of the customer that the VSD and the monitoring services being used are Summit systems instead of Baker Hughes systems.

17.   In 2015, Summit began marketing and selling a new product under the mark SENTRY™ (the "Infringing Trademark").  Summit markets the product under the Infringing Trademark in, among other things, advertising materials and on its website. (*See* Ex. 2, SENTRY Brochure, and Ex. 3, Summit Website.) Like Baker Hughes' "Vision™" service when used with SENTRYNET™, Summit's SENTRY program offers real-time well surveillance, which optimizes production and limits manpower and onsite field service. (Ex. 2, 3.) Also, like SENTRYNET™ and Vision™, Summit's products or services using the Infringing Trademark offer set points that may be adjusted without the need to send field personnel to the well location, automated alerts, and other monitoring and intervention capabilities.

15928030_3.docx

18.     The only difference between the Infringing Trademark and the SENTRYNET Trademark is the use of the suffix "NET."

19.     The Infringing Trademark is confusingly similar to the SENTRYNET[TM] Trademark.

20.     The Infringing Trademark is used in connection with oil and gas exploration products and services that are in direct competition with Baker Hughes' products and services.

21.     Upon information and belief, Summit targets its marketing and advertising of products sold under the Infringing Trademark to the same prospective customers to whom Baker Hughes markets its SENTRYNET[TM] and Vision[TM] products and services.

22.     Contemporaneous use of the SENTRYNET[TM] Trademark and the Infringing Trademark is likely to cause confusion or mistake or deception by and among consumers as to the source of the goods and services offered in connection with those marks. This includes, but is not limited to, consumers selecting Summit's SENTRY product because it is named in such a way as to create an association with Baker Hughes' monitoring component for the SENTRYNET[TM] system, instead of its Vision[TM] product or service.

23.     Upon information and belief, Summit deliberately chose the Infringing Trademark to trade on the goodwill associated with Baker Hughes' SENTRYNET[TM] Trademark.

24.     Upon information and belief, Summit did not use the Infringing Trademark or a legal equivalent thereof in commerce until after mid-2015, long after Baker Hughes began offering its goods and services under its SENTRYNET mark.

25.     Upon information and belief, Summit advertises and/or sells goods and services under the Infringing Trademark in the State of Oklahoma and this District.

26.     Summit markets its products and services under the Infringing Trademark on its website located at www.summitesp.com (the "Summit Website"). (*See* Ex. 3.)

27.     The Summit Website allows users to contact Summit directly by providing Summit's contact information.  (*See* Ex. 3.)

28.     Through the Summit Website, Summit advertises and/or sells its products throughout the United States. The Summit Website allows users in Oklahoma, in this District and elsewhere to view and purchase Summit's products, including those sold under the Infringing Mark.

29.     The Summit Website also identifies numerous locations throughout the country in which Summit operates facilities for the sales and/or service of their products including, upon information and belief, those sold under the Infringing Mark.  (*See* Ex. 2.)   Summit's   locations   may   be   found   at   the   URL http://www.summitesp.com/locations.html.

30.     The Infringing Trademark is confusingly similar to the SENTRYNET$^{TM}$ Trademark and is used to sell products and services in competition with Baker Hughes' SENTRYNET$^{TM}$ and Vision$^{TM}$ products and services to the same prospective customers, using the same channels of trade utilized by Baker Hughes, thereby violating Baker

Hughes' rights in the SENTRYNET$^{TM}$ Trademark.   As a result of its activities in Oklahoma, Summit has purposefully directed its unlawful activities into Oklahoma and this District.

**COUNT I**

**INFRINGEMENT OF A COMMON LAW TRADEMARK**

31.     Baker Hughes re-alleges and incorporates by reference the allegations contained in each preceding paragraph as if fully set forth herein.

32.     This is an action under the trademark laws of the United States, specifically, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, for Summit's unlawful use and infringement of Baker Hughes' common law SENTRYNET Mark.

33.     The SENTRYNET$^{TM}$ Trademark is an inherently distinctive, valid, protectable trademark to which Baker Hughes owns all right, title and interest.

34.     As between the parties, Baker Hughes has priority of use of the trademark SENTRYNET$^{TM}$.

35.     Summit's use of the Infringing Trademark and marks identical and/or confusingly similar to the SENTRYNET$^{TM}$ Trademark in association with Summit's products and services infringes on Baker Hughes' rights in and to the SENTRYNET$^{TM}$ Trademark in violation of 15 U.S.C. § 1125.

36.     The parties' products support identical customers, are sold in the same markets, and are marketed in the same manner.

37.     Summit's use of the Infringing Trademark is likely to cause confusion, or to cause mistake, or to deceive as to the source, origin and sponsorship of the

9

corresponding goods and/or services provided therewith, and to mislead the public into believing that Baker Hughes is affiliated, connected, and/or associated with Summit, and/or that Baker Hughes' goods or services – including those bearing or using the marks SENTRYNET$^{TM}$ or Vision$^{TM}$ - originate from, are sponsored by, are endorsed by, and/or are somehow approved by Baker Hughes.

38.     As a result of Summit's deliberate and unlawful conduct, and because of the likelihood of confusion engendered by Summit, Baker Hughes has been and will continue to be damaged in an amount to be determined at trial.

39.     Summit's deliberate activities have caused and will cause irreparable harm to Baker Hughes for which Baker Hughes has no remedy at law in that, if Summit's wrongful conduct continues, customers and others are likely to become further confused as to the source of the goods provided by Summit, and any infringement by Summit constitutes an interference with Baker Hughes' goodwill and customer relationships.  As a result, Baker Hughes is entitled to a preliminary and permanent injunction prohibiting Summit's use of the Infringing Mark.

40.     As a result of the foregoing, Baker Hughes is entitled to an award of its damages, as well as Summit's profits. Upon information and belief, Summit's actions are and have been in bad faith, willful and/or conscious or reckless disregard for Baker Hughes' rights, such that this is an exceptional case for which Baker Hughes is entitled to treble damages and attorneys' fees in accordance with 15 U.S.C. § 1117.

15928030_3.docx

## COUNT II

### UNFAIR COMPETITION/FALSE
### ADVERTISING/FALSE DESIGNATION OF ORIGIN

41.    Baker Hughes re-alleges and incorporates by reference the allegations contained in each preceding paragraph as if fully set forth herein.

42.    Summit's  deliberate use of the Infringing Trademark and marks identical and/or confusingly similar to the SENTRYNET$^{TM}$ Trademark is likely to cause confusion, or to cause mistake, or to deceive as to the source, origin and sponsorship of Baker Hughes and Baker Hughes' goods and services – including those bearing or using the marks SENTRYNET$^{TM}$ or Vision$^{TM}$ – and to mislead the public into believing that Summit and Summit goods and services are affiliated, connected, or associated with Baker Hughes, and that Summit's goods and services originate from, are sponsored by, are endorsed by, or are somehow approved by Baker Hughes.

43.    Summit's deliberate use of the Infringing Trademark constitutes a false designation of origin, false description, and false representation that the goods and/or services provided by Summit, originated from, are sponsored, approved, and/or authorized by Baker Hughes, and is likely to cause confusion, or to cause mistake, and/or to deceive in violation of 15 U.S.C. § 1125(a).

44.    The deliberate placement of its own company mark over that of Baker Hughes' mark upon oil and gas exploration equipment in the field constitutes a false designation of origin, false description, and false representation that the goods and/or services provided by Summit, originated from, are sponsored, approved, and/or

authorized by Baker Hughes, and is likely to cause confusion, or to cause mistake, and/or to deceive in violation of 15 U.S.C. § 1125(a).

45.     As a result of Summit's deliberate and unlawful conduct, and because of the likelihood of confusion engendered by Summit, Baker Hughes has been and will continue to be damaged in an amount to be determined at trial.

46.     Summit's activities have caused and will cause irreparable harm to Baker Hughes for which Baker Hughes has no remedy at law in that, if Summit's wrongful conduct continues, customers and others are likely to become further confused as to the source of the goods provided by Summit, and any infringement by Summit constitutes an interference with Baker Hughes' goodwill and customer relationships.  As a result, Baker Hughes' is entitled to a preliminary and permanent injunction prohibiting Summit's use of the Infringing Mark.

47.     As a result of the foregoing, Baker Hughes is entitled to an award of its damages, as well as Summit's profits, and, upon information and belief, Summit's actions are and have been in bad faith, willful and/or conscious or reckless disregard of Baker Hughes' rights, such that this is an exceptional case for which Baker Hughes is entitled to treble damages and attorneys' fees in accordance with 15 U.S.C. § 1117.

15928030_3.docx

## COUNT III

## DECEPTIVE TRADE PRACTICES

48.    Baker Hughes re-alleges and incorporates by reference the allegations contained in each preceding paragraph, as if restated in full.

49.    Summit has, in the course of business, and through the above-described acts, willfully and falsely associated Summit's goods and services with Baker Hughes' mark SENTRYNET$^{TM}$ in violation of the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. §§ 51 *et seq*.

50.    As a result of Summit's unlawful conduct, Baker Hughes has been and will continue to be damaged in an amount to be determined at trial.

51.    Summit's activities have caused and will cause irreparable harm to Baker Hughes for which Baker Hughes has no remedy at law in that, if Summit's wrongful conduct continues, customers and others are likely to become further confused as to the source of the goods provided by Summit, and any infringement by Summit constitutes an interference with Baker Hughes' goodwill and customer relationships.  As a result, Baker Hughes' is entitled to a preliminary and permanent injunction prohibiting Summit's use of the Infringing Mark.

52.    As a result of the foregoing, Baker Hughes is entitled to an award of its damages, as well as Summit's profits.

53.    Upon information and belief, Summit's unlawful acts have been intentional, knowing, willful, in bad faith and/or in conscious and reckless disregard for the rights of Baker Hughes such that Baker Hughes is entitled to exemplary damages.

15928030_3.docx

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

54.    Baker Hughes re-alleges and incorporates by reference the allegations contained in each preceding paragraph, as if fully stated herein.

55.    Summit's acts of trademark infringement and false designation of origin permit Summit to benefit from the goodwill and reputation of Baker Hughes and to obtain access to customers and sales from which Summit would not otherwise benefit.

56.    By deliberately using marks identical and/or confusingly similar to Baker Hughes' mark SENTRYNET$^{TM}$ in association with Summit's goods, Summit is unfairly competing with Baker Hughes in violation of the common law of the State of Oklahoma, which has caused and will continue to cause Baker Hughes damage in an amount to be determined at trial.

57.    Summit's activities have caused and will cause irreparable harm to Baker Hughes for which Baker Hughes has no remedy at law in that, if Summit's wrongful conduct continues, customers and others are likely to become further confused as to the source of the goods provided by Summit, and any infringement by Summit constitutes an interference with Baker Hughes' goodwill and customer relationships.  As a result, Baker Hughes is entitled to a preliminary and permanent injunction prohibiting Summit's use of the Infringing Mark.

58.    As a result of the foregoing, Baker Hughes is entitled to an award of its damages, as well as Summit's profits.

14

59.     Upon information and belief, Summit's unlawful acts have been intentional, knowing, willful, in bad faith and/or in conscious and reckless disregard for the rights of Baker Hughes such that Baker Hughes is entitled to exemplary damages.

## COUNT V

## COMMON LAW INFRINGMENT

60.     Baker Hughes re-alleges and incorporates by reference the allegations contained in each preceding paragraph, as if fully stated herein.

61.     This claim is brought under the common law of the State of Oklahoma for trademark infringement.

62.     Summit, without authorization from Baker Hughes, adopted, used and continues to use a mark identical and/or confusingly similar to the SENTRYNET$^{TM}$ Trademark.

63.     Summit's use of the Infringing Trademark is likely to cause confusion, or to cause mistake, or to deceive as to the source, origin and sponsorship of the goods and services and to mislead the public into believing that Summit and Summit's goods are affiliated, connected, or associated with Baker Hughes, and that Summit's goods originate from, are sponsored by, are endorsed by, or are somehow approved by Baker Hughes.

64.     As a result of Summit's deliberate unlawful conduct, and because of the likelihood of confusion engendered by Summit, Baker Hughes has been and will continue to be damaged in an amount to be determined at trial.

15928030_3.docx

65.     Summit's activities have caused and will cause irreparable harm to Baker Hughes for which Baker Hughes has no remedy at law in that, if Summit's wrongful conduct continues, customers and others are likely to become further confused as to the source of the goods provided by Summit, and any infringement by Summit constitutes an interference with Baker Hughes' goodwill and customer relationships.  As a result, Baker Hughes is entitled to a preliminary and permanent injunction prohibiting Summit's use of the Infringing Mark.

66.     As a result of the foregoing, Baker Hughes is entitled to an award of its damages, as well as Summit's profits.

67.     Upon information and belief, Summit's unlawful acts have been intentional, knowing, willful, in bad faith and/or in conscious and reckless disregard for the rights of Baker Hughes such that Baker Hughes is entitled to exemplary damages.

## COUNT VI

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

68.     Baker Hughes re-alleges and incorporates by reference the allegations contained in each preceding paragraph as if fully set forth herein.

69.     Summit's removal of Baker Hughes' mark upon oil and gas equipment in the field and replacement with its own company name and information is an intentional interference causing a breach of Baker Hughes' valid business expectancy and/or business relationships and/or potential customers.

70.     Summit's use of the Infringing Trademark is an intentional interference causing a breach of Baker Hughes' valid business expectancy and/or business relationships with its customers.

71.     As a result of the foregoing, Baker Hughes is entitled to an award of its damages, as well as disgorgement of Summit's profits.

72.     Upon information and belief, Summit's unlawful acts have been intentional, knowing, willful, in bad faith and/or in conscious and reckless disregard for the rights of Baker Hughes such that Baker Hughes is entitled to exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Baker Hughes requests the Court enter judgment in its favor as follows:

A.     Judgment be entered in favor of Baker Hughes against Summit as to each of the above counts;

B.     Summit, its officers, agents, servants, employees, successors and assigns, and all persons acting in concert or participation with Summit, be preliminarily and permanently enjoined from using the Infringing Mark and/or any trademarks or designations of source identical and/or confusingly similar to the SENTRYNET™ Trademark in any form, and be permanently enjoined from any and all other conduct which is likely to cause confusion or to cause a mistake or deceive as to affiliation, connection or association among Summit with Baker Hughes and/or as to the origin, sponsorship or approval of Summit's goods by Baker Hughes, including but not limited

17

to covering up or removing any Baker Hughes trademarks from any equipment originating from Baker Hughes;

C.      Summit be ordered to cease and desist all use of the Infringing Mark, whether online or otherwise, and to remove and deliver for destruction all signs, labels, displays, literature, recorded commercials, advertising or other material or tangible things in their possession or control, or their agents or employee's possession or control, that incorporate or use the Infringing Trademark, or any other designation that is identical and/or confusingly similar to the SENTRYNET$^{TM}$ Trademark;

D.      Summit be ordered to publish corrective advertising to correct the confusion it created and to prevent Summit from further benefiting from the goodwill and strength of the SENTRYNET$^{TM}$ Trademark;

E.      Summit be ordered to remediate all Baker Hughes equipment Summit has tampered with by removing, obliterating or obscuring or by causing to be removed, obliterated or obscured, any Baker Hughes trademark by having all removed, obliterated, or obscured Baker Hughes trademarks be returned to their original condition at the time of manufacture or distribution by Baker Hughes;

F.      Summit be required to pay such damages as Baker Hughes has sustained as a consequence of Summit's unlawful acts and pursuant to the claims set forth herein, including exemplary damages;

G.      Summit be required to pay Baker Hughes' costs, expenses, and reasonable attorneys' fees in connection with this action; and

H.      Such other and further relief as this Court may deem appropriate and just.

Respectfully submitted,

*s/ John Kenney*

John Kenney, OBA #4976
Rachel Blue, OBA # 016789
Jeremiah Buettner, OBA #21615
MCAFEE & TAFT A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
john.kenney@mcafeetaft.com
rachel.blue@mcafeetaft.com
jeremiah.buettner@mcafeetaft.com

***ATTORNEYS FOR PLAINTIFF***
***BAKER HUGHES, INCORPORATED***