IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BAKER HUGHES, INCORPORATED, )
a Delaware corporation, )
 )
        Plaintiff, )
 )
vs. ) Case No. 15-cv-484-JFJ
 )
SUMMIT ESP, LLC, an Oklahoma )
limited liability company, )
 )
        Defendant. )

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Civil Contempt (ECF No. 30). Plaintiff Baker Hughes, Inc. ("Baker Hughes") seeks an order of civil contempt against Defendant Summit ESP, LLC, ("Summit") for alleged violations of the Agreed Permanent Injunction ("PI") entered by United States Magistrate Judge T. Lane Wilson on June 14, 2016 (ECF No. 28). Baker Hughes seeks monetary damages, equitable relief, and attorneys' fees.

**I.    Factual Background**

Baker Hughes filed its lawsuit against Summit in August 2015, alleging trademark infringement and deceptive trade practices. ECF No. 2. Specifically, Baker Hughes alleged that Summit was covering Baker Hughes' trademark-protected logo on Baker Hughes' equipment with a Summit logo, and that Summit was selling a product under the name SENTRY, which infringed upon Baker Hughes' trademark, SENTRYNET. *Id.* at ¶¶ 15-17. The parties reached a settlement in May of 2016. On June 14, 2016, Judge Wilson entered the agreed PI. ECF Nos. 23, 28. The PI prohibits Summit, in pertinent part, from

> *[i]ntentionally covering or obscuring* any Trademarks, Service Marks, contact information of other source, manufacturing or reference information depicted on

any equipment manufactured by or on behalf of Baker Hughes, including but not limited to the service mark SENTRYNET™, the registered trademark CENTRILIFT® (U.S. Reg. No. 4,236,677), the registered trademark BAKER HUGHES® (U.S. Reg. No. 2,987,193), any registered and common-law trademarks or service marks incorporating the literal elements BAKER HUGHES, and all trademarks and service marks specifically set forth in the Complaint filed in this proceeding; . . . .

ECF No. 28 (emphasis added). The PI operated as a final judgment, and all other "claims, counterclaims and other requests for relief set forth in the pleadings" were dismissed with prejudice. *Id.*

In support of its Motion for Civil Contempt, Baker Hughes presented evidence establishing the following facts. In the spring of 2017, Baker Hughes employees working in Wyoming discovered two Summit stickers covering the Baker Hughes mark. On April 10, 2017, a Baker Hughes technician working at a location called "Greaswood 22-6" observed a Summit service sticker covering the Baker Hughes mark on a piece of Baker Hughes' equipment called a Variable Speed Drive ("VSD"). The technician took a photo of the VSD and recorded the serial number. After tracing the serial number, Baker Hughes learned it had sold the VSD, took it back on trade in July of 2016, and then sold and shipped the VSD to a new customer, Breitburn Management Company ("Breitburn"), on September 26, 2016. On May 25, 2017, a Baker Hughes field specialist working at a location called "Greaswood State 44-36" observed a Summit service sticker covering the Baker Hughes mark on a second VSD. The field specialist took a photo of the VSD. Baker Hughes discovered the VSD had been sold, returned to Baker Hughes on trade in July 2016, and then sold and shipped to Breitburn on September 26, 2016. The Baker Hughes Field Service Supervisor at Cody, Wyoming, submitted a declaration stating that the two VSDs did not have Summit stickers on them when they left Baker Hughes' facility in September of 2016.

As proof that Summit employees (as opposed to other individuals) placed the Summit service stickers on these VSDs, Baker Hughes presented evidence that: (1) Summit regularly services the VSDs for Breitburn, and (2) the VSDs are in an isolated location forty miles from the nearest town. In support of its contention that Summit employees "intentionally" covered or obscured the Baker Hughes mark, Baker Hughes submitted evidence showing that both stickers fully covered the Baker Hughes mark and left no portion of the mark visible.

In response to the Motion for Civil Contempt, Summit raised three legal arguments: (1) Baker Hughes failed to show that Summit intentionally violated the PI by clear and convincing evidence; (2) Summit acted in "good-faith substantial compliance" with the PI; and (3) Baker Hughes failed to establish any losses or harm flowing from the alleged violations. Dan Wells ("Wells"), the Summit official who manages operations in the State of Wyoming, submitted an affidavit stating that: (1) he is familiar with the prohibitions of the PI; (2) he has "advised technical field personnel not to use [Summit] stickers to cover up Baker Hughes Trademarks or names;" and (3) he is not aware of any Summit employees who have intentionally placed Summit stickers over the Baker Hughes mark. Wells Decl., ECF No. 41-1. Wells further stated:

> While I have no information that any [Summit] technical field personnel placed the offending [] stickers that led to the Motion to Contempt, it has been the intention of [Summit] to comply with the terms of the injunction. Summit settled the prior filing (admitting no guilt, damage, etc.) in an attempt to move forward and in expectation that Baker Hughes would be reasonable like other competitors in the industry. Stickers are an industry norm and these complaints could have resolved in a businesslike and amicable manner. . . . In the future, I am available to address any concerns by Baker Hughes about [Summit's] compliance with the Injunction rather than require the time and resources of the Court. Again, it has been the intention of [Summit] to comply with the Injunction.

*Id.*

In support of its argument regarding the lack of competitive harm flowing from the alleged violations, Summit submitted the affidavit of Thomas Faulkner ("Faulkner"), Wyoming

3

Operations Manager for Breitburn. Faulkner stated, as the owner of the equipment, it "has no concerns over the placement of the [Summit] stickers on Breitburn's ESP equipment." Faulkner Decl., ECF No. 41-2. He further stated that Breitburn "continues to use Baker Hughes as an ESP vendor based upon competitive bidding among ESP suppliers for various wellsites" and that "[n]othing about the placement of the [Summit] stickers has changed Breitburn's business relationship with Baker Hughes." *Id.*

## II. Legal Standards

A party seeking civil contempt has the initial "burden of proving, by clear and convincing evidence, [1] that a valid court order existed, [2] that the defendant had knowledge of the order, and [3] that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (internal citation omitted). A movant need not prove an intentional or purposeful violation; instead, courts are justified in finding civil contempt based merely on a party's "failure to be reasonably diligent" in complying with the order. *Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. Partnership*, 95 F. Supp. 2d 1252, 1256 (D. Utah 2000); *see generally McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt. . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.").[1]

A party defending a motion for civil contempt may assert the defense of "good-faith substantial compliance" with the court order. *See Spectra Sonics Aviation, Inc. v. Ogden City*, 931 F.2d 63, at *2 (10th Cir. 1991) (unpublished) ("[I]t is a defense to a claim of civil contempt if the Defendant takes all reasonable steps and substantially complies with the court order."); *see also*

---

[1] As explained below, the PI in this case uses the word "intentionally." Summit contends this requires a showing of an intentional, rather than inadvertent, violation of the PI. The Court addresses this argument below.

4

*Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 40 (D.D.C. 2010) ("Demonstrating the inability to comply or good faith substantial compliance can justify noncompliance with a court order and enable a party to avoid a civil contempt finding.") (internal quotations omitted); *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 30 (D.D.C. 2014) ("Once the court determines that the movant has made the above three-part showing, the burden shifts to the defendant to justify the noncompliance by, for example, demonstrating its financial inability to pay the judgment or its good faith attempts to comply."). Any justifications for non-compliance must be supported by detailed proof, and "conclusory allegations" are insufficient. *See Latney's Funeral Home, Inc.*, 41 F. Supp. 3d at 30.

## III. Analysis

### A. Violations

The first two elements of civil contempt are not in dispute. The Court finds Baker Hughes has established the third element, Summit's disobedience with the PI, by clear and convincing evidence. Based on the timeline established by Baker Hughes, the Summit stickers were placed on the equipment after the PI was entered. Summit employees regularly service the equipment for Breitburn, and the equipment is in an isolated location. Summit employees have incentive to place a Summit sticker on the equipment, and Summit admits that placement of service stickers on equipment is a common industry practice. Based on these circumstances, there is a reasonable certainty that Summit employees, rather than some other individuals, placed the Summit stickers on the equipment. Although Summit speculates that an individual may have obtained a Summit sticker at a trade show and placed it on the equipment, this is an unlikely scenario without factual support.

Baker Hughes has also presented photographic and other evidence demonstrating that Summit "intentionally" covered or obscured the Baker Hughes mark. The Summit stickers were perfectly sized to cover the mark and were placed carefully to just cover the mark. As argued by Baker Hughes, they were not "placed to the side of, nor to the top or bottom of" the Baker Hughes mark. ECF No. 42 at 6. Summit contends that Baker Hughes "furnished no evidence about intent" and that any "improper placement of the Summit EDP stickers would have been inadvertent." ECF No. 41 at 7. The Court rejects this argument. The "intentionally" language in the PI merely modifies "covering or obscuring," and it does not alter the general standards explained above relevant to civil contempt proceedings. In other words, intentional *placement* of the stickers in a manner to cover the Baker Hughes mark violates the PI regardless of whether the individual acted with specific intent to violate the PI.

### B. Good-Faith Substantial Compliance

Summit has failed to meet the high burden of demonstrating that, although these two violations occurred, Summit was in "good-faith substantial compliance" with the PI. Summit submitted only the conclusory affidavit of Wells – the supervisor in Wyoming – stating that he informed "field personnel" not to use Summit stickers to cover the Baker Hughes mark. However, Summit has not presented evidence of when Wells gave this instruction; how he communicated this instruction (in person, by email, by bulletin, etc.); the identity or location of the field personnel who received the instruction; or whether those individuals included the field personnel most likely to service the equipment in question. Further, Wells did not indicate whether he investigated these two specific violations or inquired of relevant employees in the Wyoming area after learning of the violations. Therefore, his statement that he is not aware of any intentional violations is inconsequential. Summit also failed to present evidence of its efforts to avoid future non-

compliance in the Wyoming area or other geographic areas. In short, Summit's "substantial compliance" evidence is not sufficiently detailed, does not demonstrate that Summit took all reasonable steps to comply with the PI, and does not adequately explain efforts to ensure future compliance. *See Latney's Funeral Home, Inc.*, 41 F. Supp. 3d at 30 (finding that defendants failed to meet their burden where they failed "to demonstrate with sufficient detail" how certain procedures would prevent future noncompliance). Therefore, Summit is held in civil contempt for two violations of the PI.

        **C.**      **Civil Contempt Damages/Remedies**

Civil contempt damages serve two purposes: (1) to coerce compliance with the court's order; and (2) to compensate the injured party for losses or damages resulting from noncompliance. *See F.T.C. v. Kuykendall*, 371 F.3d 745, 764-65 (10th Cir. 2004); *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir. 1998). Civil contempt damages need only be proven by a preponderance of the evidence. *See Reliance Ins. Co.*, 159 F.3d at 1318.

Although the Court finds that violations occurred, the Court declines to impose any coercive or compensatory damages against Summit. First, with respect to coercive damages, the Court accepts Summit's representations that it has taken some steps and will continue to take reasonable steps to comply with the PI. Summit expressed a desire and willingness to resolve future issues amicably and without Court involvement, which the Court encourages. Although Summit did not meet its "substantial compliance" burden, the Court finds no reason to believe Summit is unwilling to comply with the PI or that coercive damages are necessary in this case.

Second, with respect to compensatory damages, Baker Hughes has failed to establish any losses or damages by a preponderance of the evidence. Baker Hughes sold the equipment to Breitburn in September of 2016 and received the profit from those sales. The only losses possibly

suffered would be profits gained from service and/or repair of that equipment since the date of purchase and, possibly, any additional equipment that Breitburn purchased from Summit that could have been purchased from Baker Hughes. However, Baker Hughes has not submitted any evidence that these types of losses occurred. In fact, Faulkner testified that the stickers have not altered Breitburn's business relationship with either party and that it continues to use both companies in various ways. Faulkner also testified that, as the owner of the equipment, placement of the stickers does not cause Breitburn problems or concerns. Breitburn certainly does not appear to be confused about the two companies or what services they provide. Based on the remote location of the equipment, there is no evidence that Summit intentionally covering the Baker Hughes mark caused other types of lost profits, damages, or competitive harm. Therefore, the Court declines to impose any money damages based on the two violations at issue.[2]

The Court imposes the following, limited equitable remedies:

1. Summit must remediate by removing the two known offending stickers, paying to bring these two units back to their original condition, and paying to have the cabinets repainted if removal of the sticker damages the Baker Hughes mark.

2. If Summit is aware of any other violations or becomes aware of any other violations of the PI, Summit must immediately inform Baker Hughes and take the remedial steps explained above.

3. Summit must continue taking reasonable steps to inform its employees of the PI and avoid violations of the PI.

---

[2] Baker Hughes also seeks damages under the Lanham Act. Such damages would not serve either of the two purposes identified above and are therefore denied.

The Court agrees with Summit that other requested remedies, including a public apology and written notices to customers, are "overreaching" and unnecessary.

The Court declines to impose any attorneys' fees. Summit contends it was willing to attempt to resolve these issues without Court involvement, and the Court is not inclined to grant attorneys' fees without a showing that Summit refused to remediate or cooperate once the violations were brought to its attention.

## III. Conclusion

Plaintiff's Motion for Civil Contempt (ECF No. 30) is **GRANTED IN PART** to the limited extent set forth herein.

SO ORDERED, this the 19th day of January, 2018.

*[Signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**